**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 07-0791-WS-B** |
| ) | |
| **JIMMY R. RICHARDSON,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This declaratory judgment action comes before the Court on plaintiff's Motion for Summary Judgment (doc. 26). The Motion has been briefed and is ripe for disposition.[1]

**I.    Background Facts.**[2]

    *A.    The Fire.*

In September 2005, plaintiff, State Farm Fire and Casualty Company, issued a homeowner policy (the "Policy") of insurance to defendant, Jimmy R. Richardson, bearing

---

[1]    Plaintiff's Rule 56 Motion incorporates a 22-page statement of Suggested Determinations of Undisputed Facts (doc. 24). Its 21-page Memorandum of Law (doc. 25) includes no statement of facts. The 30-page briefing limitation set forth in Local Rule 7.1(b) would be meaningless if a party could disaggregate the fact and law portions of its brief into two different filings. The proper procedure for movant to follow here would have been either (a) to submit a consolidated memorandum (addressing both facts and law) of 30 pages or less, or (b) to request an enlargement of the LR 7.1(b) page limitation. Either way, the suggested determinations of fact and conclusions of law are properly submitted as a separate document, pursuant to LR 7.2(a), and the brief should be a self-contained filing including all factual recitation and legal discussion necessary to support the movant's position. Additionally, plaintiff's filings contain an unusually high incidence of obvious typographical errors (many involving spaces in the middle of words or no spaces between words) that should have been corrected before filing. In its discretion, the Court will consider these summary judgment submissions in their current form, notwithstanding these infirmities.

[2]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, defendant's evidence is taken as true and all justifiable inferences are drawn in his favor.

number 01-CF-5239-7, to insure Richardson's residence premises located at 14461 Main Street, Orrville, Alabama 36767 for the period of October 15, 2005 through October 15, 2006. (Defendant's Exh. A.)  The Policy, which provided combined coverage of $100,100 on the dwelling and personal property, insured Richardson's home for loss due to fire and certain other perils.  (*Id.*)  The Policy was in full force and effect on August 5, 2006.

On August 5, 2006, the Orrville Volunteer Fire Department responded to a house fire at 14461 Main Street in Orrville, Alabama.  The fire report reflects that the house was a "total loss."  (Defendant's Exh. C, at SF-127.)  The only occupant of the house listed in the fire report is Ceola Richardson, who is Richardson's ex-wife.  (*Id.*)[3]  Richardson was not present at the time of the fire.  (Richardson Dep., at 147.)

**B.     *The Reporting of the Fire to State Farm.***

The evidence as to when, how and in what fashion the fire was reported to State Farm is hotly contested.  Taken in the light most favorable to the nonmovant, however, the record reflects that Richardson reported the loss to the office of his State Farm agent, John Oliver, via telephone call approximately one week after the fact.  (Richardson Dep., at 143.)[4]  At that time, Richardson spoke with Oliver's secretary, Bessie Davis, and reported the fire.  (*Id.*)[5]  Richardson

---

[3]     Pursuant to Richardson's divorce decree, Ceola Richardson owned one-half of the premises at 14461 Main Street.  (Richardson Dep., at 164.)  However, Ceola Richardson was not listed as a policy holder on the Policy.  (Defendant's Exh. A; Richardson Dep., at 42.)  Nor is she a party to these proceedings.

[4]     Richardson explained that he waited before reporting the fire to Oliver's office because his ex-wife "had insurance so [Richardson] had to wait and see what she was going to do."  (*Id.* at 33.)  More specifically, he was waiting to see whether Ceola Richardson would file an insurance claim for the house through any separate coverage she may have had.  (*Id.* at 62.)

[5]     Defendant took Davis's deposition during discovery, and relies on that deposition in support of certain statements of fact in his summary judgment response.  Unfortunately, he does not reference particular portions of the deposition, but instead cites globally to "Davis' deposition, pgs. 10-226."  (Defendant's Brief (doc. 27), ¶¶ 4-16.)  It is not the responsibility of this Court or opposing counsel to sift through 217 pages of mostly extraneous deposition transcript searching for a particular excerpt that might support counsel's characterization of the testimony.  Indeed, Local Rule 7.2(b) specifically requires a summary judgment nonmovant to "point out the disputed facts appropriately referenced to the supporting document or documents filed."  *Id.*  No such "appropriate references" have been made here, with counsel instead inviting

-2-

had dealt with Davis (who had worked for Oliver for more than a decade) on many prior occasions because he conducted a great deal of insurance business through Oliver and went to his office frequently.  (*Id.* at 30-31; Davis Dep., at 10-11.)  According to Richardson, he "called and asked about the insurance and told them about the fire" that day.  (Richardson Dep., at 29.)  In Richardson's own words, he "just told her about the fire and I wanted to know about the insurance and that was all."  (*Id.* at 34.)  Richardson's testimony is quite clear, however, that he did not make a claim at that time, nor did he ask Davis to submit a claim on his behalf.[6]

Reporting a loss and making a claim are two different things.  (Davis Dep., at 228.)  Davis's unambiguous testimony was that she would not have submitted a claim to State Farm based on a report of loss until she had confirmed that the insured actually wished to make a claim.  (*Id.* at 18, 44, 126.)  There is no evidence that Richardson or anyone acting on his behalf followed up with Oliver, with Davis or with State Farm about the fire or to request that a claim

---

this Court to spend untold time seeking a needle in the haystack that might support nonmovant's bald factual assertions.  Defendant proceeds in this fashion at his peril.  Federal courts do not scour uncited portions of parties' evidentiary submissions for any scrap of evidence that may advance their positions.  *See Preis v. Lexington Ins. Co.*, 508 F. Supp.2d 1061, 1068 (S.D. Ala. 2007) ("Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions."); *Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it").  And, of course, a nonmovant's unsupported statements of fact need not be credited at the Rule 56 stage.  *See Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 40 (1st Cir. 1998) (despite generous Rule 56 standard, reviewing court need not "swallow plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited") (citation omitted).

[6]     In his deposition, Richardson repeatedly testified, "I didn't tell her about filing the claim," but instead simply informed Davis that there had been a fire and checked to make sure that he had insurance coverage for the house.  (*Id.* at 35.)  Thus, defendant's version of the facts is that, approximately one week after the fire, he called his insurance agent's office to notify the agent of the fire at his insured property on 14461 Main Street, and to verify that there was coverage in place.  Defendant's sworn testimony unequivocally refutes the notion that he took any further action - or that he asked the agent to take any action on his behalf - at that time.

be filed until May 17, 2007.[7]  On that date, Richardson's attorney, Jeffrey Robinson, called

Oliver's office and spoke with Davis about the August 2006 fire.  (Davis Dep., at 34-35.)

Significantly, Robinson did not inform Davis that he was calling to check on a claim, nor did he

inquire as to the status of State Farm's investigation of the fire loss to Richardson's property.

(*Id.* at 36-37.)  At Davis's request, Robinson faxed a copy of the fire report to her on that date.

(*Id.* at 38.)  This marked the first time that Richardson or anyone associated with him had ever

furnished a copy of the fire report to his State Farm agent for insurance claim purposes.  (*Id.* at

40, 230.)  On the very day that she received the fire report, Davis completed and submitted the

paperwork to State Farm to initiate a claim for the August 2006 loss to Richardson's covered

property.  (*Id.* at 40, 45.)

　　Defendant asserts that "four (4) individuals - the Defendant, the Defendant's ex-wife, the

Defendant's daughter, and the Defendant's attorney - all reported this matter to the insurance

company in a timely fashion."  (Doc. 27, ¶ 21.)  The facts are otherwise.  To be sure, defendant's

evidence is that Richardson himself notified Oliver of the fire (without making a claim)

approximately one week after it happened in August 2006.  However, there is no evidence that

Ceola Richardson reported the loss "in a timely fashion," or at any time prior to spring 2007.

Defendant has cited no record evidence that Richardson's daughter ever reported the loss, much

---

　　　[7]　　The record does show that defendant's ex-wife (or someone calling on her behalf)
notified Oliver's office of the fire; however, defendant's evidence does not establish any time
frame for that report, other than the bald assertion of counsel that it happened shortly after the
fire loss.  Such representations of counsel are not credited on summary judgment.  *See Taylor v.
Holiday Isle, LLC*, 561 F. Supp.2d 1269, 1275 n.11 (S.D. Ala. 2008) ("Unadorned
representations of counsel in a summary judgment brief are not a substitute for appropriate
record evidence.").  Davis's testimony places that report in approximately the spring of 2007,
long after the loss occurred.  (Davis Dep., at 75, 95.)  Moreover, the record shows that Davis did
not submit a claim on the loss at that point because Ceola Richardson was not the named insured
or policyholder for the Policy.  As Davis explained, upon speaking with Ceola Richardson, she
attempted to get in touch with Richardson to confirm that he wanted a claim to be submitted
under his Policy.  (*Id.* at 18.)  Davis testified, "I was trying to reach him because he was the
insured.  To put a claim in on someone, I wanted to make sure that I needed to put a claim in for
that, for the fire on his home."  (*Id.* at 20.)  It is undisputed that Davis had never been able to
speak with Richardson concerning the fire between the time she spoke with Ceola Richardson
(or her emissary) and May 2007, when she was first contacted by Richardson's lawyer.  (*Id.* at
38.)

less that she did so in a timely fashion.  And the record before the Court shows that Richardson's attorney first reported the loss to the agent in May 2007, some 9 months after the loss occurred, which can hardly be deemed timely.  The Court therefore does not credit defendant's attorney's unsupported statement that four different people reported the fire loss to State Farm in a timely manner, as the record evidence construed in the light most favorable to the nonmovant does not support such an inference.  In the light most favorable to Richardson, the record shows that he (and only he) reported the loss to the agent in a timely manner.

>    C.    *State Farm's Investigation of the Claim.*

In contrast to the jumbled factual dispute concerning the reporting process, the record evidence is largely uncontested as to what transpired after State Farm initiated its claims process in May 2007.

Upon commencing its investigation of Richardson's fire claim, State Farm invoked the "Duties After Loss" provision of the Policy in an attempt to obtain potentially relevant information from the insured.  In particular, State Farm proceeded pursuant to the Policy provision requiring Richardson to cooperate with its investigation in the following respects:

> "d.    as often as we may reasonably require:
>
> >    *            *            *
>
> (2)    provide us with records and documents we request and permit us to make copies; [and]
>
> (3)    submit to and subscribe, while not in the presence of any other insured:
>
> >    (a)    statements; and
> >
> >    (b)    examinations under oath."

(Defendant's Exh. A, at SF-20.)

On June 8, 2007, State Farm submitted a written list of 19 questions for Richardson to answer in connection with its investigation of his claim.  (Defendant's Exh. C, at SF-39.)  These questions consisted of such basic queries as biographical information for Richardson, the date of loss, when Richardson notified State Farm of the loss, when he first became aware of the loss, why he delayed in reporting the loss, whether he was present at the insured location at the time of the loss, who was present, whether he knew how the fire started, who responded to the fire, whether a fire report was prepared, and whether the insured property was subject to a mortgage.

(*Id.* at SF-47.)

Richardson was on notice that State Farm's queries were not simply idle, optional, or make-work requests. He was further on notice that the terms of the Policy obliged him to cooperate with State Farm's investigation. Indeed, on June 21, 2007, approximately 30 days into its investigation, State Farm transmitted a reservation of rights letter to Richardson, explaining that the insurer had questions concerning its indemnity obligations relating to the fire loss, based specifically on (a) lack of compliance by Richardson with policy provisions requiring his assistance and cooperation (and quoting such provisions in relevant part), and (b) delay by Richardson in giving notice of loss to State Farm. (Plaintiff's Exh. C, at SF-40.)[8] Nonetheless, Richardson tarried in responding to the 19 written questions transmitted to his lawyer on June 8, 2007. State Farm prompted Richardson for answers in a letter dated July 5, 2007. (*Id.* at SF-44.) Finally, on July 25, 2007, nearly seven weeks after State Farm had posed the written questions, Richardson's attorney mailed partial and incomplete responses back to State Farm. (*Id.* at SF-46-47.) Seven of those questions went unanswered altogether, including critical items such as: (a) when the loss occurred; (b) when Richardson notified State Farm of the loss; (c) when he first became aware of the loss; (d) why he delayed in reporting the loss to State Farm; (e) where he was at the time of the loss; and (f) who was present at the time of the loss. (*Id.*)[9] State Farm

---

[8]	On the notice of loss issue, the "Duties After Loss" section of the Policy obligated the insured to "give immediate notice to [State Farm] or [its] agent" after a loss to which coverage might apply. (Defendant's Exh. A, at SF-20.)

[9]	With respect to several of these questions, Richardson cryptically answered, "I reserve my rights at this point." The others were simply left blank. In his deposition, Richardson offered overlapping and in some respects inconsistent explanations for his conduct in this regard. At the outset, Richardson justified his "reservation of rights" answer to the question about the date of loss by testifying, "Well, I didn't see no reason for answering that unless I was in court to answer it." (Richardson Dep., at 52.) He confirmed that his view was that he did not have to answer State Farm's questions during its investigation of his claim because there was no court case pending at that time. (*Id.*) Richardson later explained that his reservation of rights with respect to certain questions was intended to be an exercise of his Fifth Amendment privilege against self-incrimination. (*Id.* at 55.) Richardson also testified that he had not answered certain of State Farm's questions on advice of counsel. (*Id.* at 61, 63.) So, viewed in the light most favorable to the nonmovant, the record reflects that Richardson declined to answer more than one-third of the written questions posed by State Farm concerning the fire loss and his

-6-

immediately notified Richardson (via letter to his attorney dated July 30, 2007) that State Farm did not view Richardson's partial, incomplete answers to the written questions as fulfilling his obligations to the insurer under the express terms of the Policy.

Throughout its investigation, State Farm sought to interview Richardson in person to take a statement from him concerning the fire loss.  Indeed, State Farm made this request via letters dated July 5, 2007, July 26, 2007, July 30, 2007, August 9, 2007, August 16, 2007, August 27, 2007, August 31, 2007, September 14, 2007, September 26, 2007, October 2, 2007, October 16, 2007, and October 23, 2007.  (Plaintiff's Exh. C, at SF-40 through SF-77.)  In these 12 letters spanning three and a half months, State Farm consistently, unambiguously, and emphatically took the position that it needed to meet with Richardson and take a recorded statement from him in order to complete its investigation.[10]  The State Farm letters also spelled out with crystalline clarity the insurer's view (based on specific citations to Policy provisions) that failure on Richardson's part to participate in this process would amount to a material breach of the "Duties After Loss" portion of the Policy.

Richardson's responses to State Farm's letters were authored by his attorney and adopted tactics of stonewalling, obstruction and delay.[11]  Several State Farm inquiries received no

_____

reporting of that loss because of some combination of (a) feeling that he did not have to answer State Farm's questions unless he was in court, (b) invoking his Fifth Amendment privilege against self-incrimination, and (c) acting on advice of counsel.

[10]      By way of example, a State Farm claim representative notified Richardson in a letter dated July 26, 2007 that "I need to meet with Mr. Richardson as soon as possible ... for the purpose of obtaining his recorded statement concerning his claim.  The evaluation, investigation, and review of this claim cannot be completed until I have obtained the recorded statement of Mr. Richardson."  (Plaintiff's Exh. C, at SF-48.)  Based on this and many similar statements peppering State Farm's correspondence, Richardson was fully apprised of the importance of his submission to a recorded statement to State Farm's investigation of his claim.

[11]      It is problematic that Robinson, the same attorney who had numerous contacts with State Farm on Richardson's behalf during State Farm's investigation of this claim, now represents him in this lawsuit relating to that investigation.  As this discussion demonstrates, Robinson is a witness to this case, and it seems likely that in any trial of these proceedings Robinson would be called to testify as to his dealings with State Farm on Richardson's behalf concerning the insurance investigation that lies at the heart of this lawsuit.  As such, the propriety of Robinson's representation of defendant in these proceedings is in some doubt.  *See,*

response at all from Richardson.  Other times, Richardson's attorney challenged State Farm's requests for an interview by demanding to know the purpose of the meeting, stating that he "cannot fathom" why State Farm would need to meet with him for more than a few minutes, and accusing State Farm of "trying to ... fabricate a case for not paying" the claim and of "trying to renege on its agreement to pay his insurance claim."  (Plaintiff's Exh. C, at SF-45, 57.)  Beginning in August 2007, Richardson's attorney insisted that State Farm furnish the questions it intended to ask Richardson in advance, stating that once he received the questions "there is a possibility we will consider a meeting."  (*Id.* at SF-57.)  The insured's demands for a list of specific questions before consenting to be interviewed by the insurer became a mantra repeated on numerous occasions in correspondence between August and October, 2007.  (*Id.* at SF-57 through SF-78.)  When plaintiff declined to furnish such a list, Richardson's attorney asked State Farm to show where in the Policy language the insurer was relieved of responsibility for submitting questions to the insured prior to taking a recorded statement.  (*Id.* at SF-67.)  When State Farm requested that Richardson's attorney provide authority for his position and cautioned that Richardson's noncooperation could result in abatement of his claim, Richardson's attorney protested, "What you are trying to do is beyond belief.  You are trying to get [Richardson] to submit to a hearing without any knowledge of the kinds of questions and/or the substance of the questions to be asked. ... [P]lease be advised that it is in your company's peril, not [Richardson]'s as you suggest, if this matter is not settled."  (*Id.* at SF-75.)  When pressed again for authority to support his stance, Richardson's lawyer cited only the *Miranda* principle for the proposition that anything Richardson might say during the interview could be used against him

---

*e.g., Putman v. Head*, 268 F.3d 1223, 1246 (11th Cir. 2001) ("[R]ules of professional conduct generally disapprove of lawyers testifying at proceedings in which they are also advocates."); Alabama Rules of Professional Conduct, Rule 3.7(a) ("A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness, except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.").  As there has been no motion to disqualify Robinson, and as the Rule 56 proceedings will pretermit this case short of trial, the Court declines to decide whether Robinson could properly represent Richardson at trial.

in court, leaving him at the "mercy" and "risk" of State Farm.  (*Id.* at 78.)[12]

In addition to requesting that Richardson submit to a recorded statement, State Farm asked him to provide the following documents and records in connection with his claim: warranty deeds, mortgage documents, mortgage payment history, documents pertaining to work performed on the house in the 12-month period preceding the fire, documents pertaining to his marriage and divorce from Ceola Richardson,[13] and documents relating to other property owned or rented by Richardson.  (*Id.* at SF-55.)  Richardson did not provide these documents, but instead argued that he should not have to produce them because either State Farm already had them or they were not relevant.  (*Id.* at SF-57.)  Once again, Richardson elected to fight the insurance investigation rather than cooperate with it.

As a result of the foregoing sequence of events, the parties reached a stalemate in late October 2007.  State Farm had unequivocally invoked its right under the Policy to take a recorded statement and to obtain certain documents from Richardson, and had informed him that it could not complete its investigation of his claim until that happened.  Richardson had refused to cooperate with those requests by disputing the need for the documents and emphatically conditioning his willingness to provide a recorded statement on State Farm's advance submission of a list of specific questions to him.  State Farm had declined to provide such a list on the grounds that the Policy did not require it to do so, and had determined that Richardson's claim would be held in abatement for his lack of cooperation.  Richardson, in turn, had

---

[12]    Even as Richardson's lawyer erected barriers to State Farm's claims investigation process, and even after he knew that State Farm was abating its investigation of the claim because of such obstacles, he insisted to State Farm on October 19, 2007 that Richardson "has cooperated with you fully relative to this matter."  (*Id.* at SF-75.)  On October 26, 2007, Richardson's attorney wrote to State Farm that Richardson "has never refused to cooperate and/or delayed the settlement of this claim.  I do believe your company is the one delaying settlement by refusing to cooperate."  (*Id.* at SF-78.)  These statements are simply counterfactual and are directly refuted by the stream of correspondence that preceded them.

[13]    State Farm explained to Richardson's attorney that these marriage and divorce records were relevant because Richardson's ex-wife was residing in the home at the time of the fire.  (*Id.* at SF-59.)  This position was clearly reasonable under the circumstances, and State Farm was entitled to peruse these records for any facts that might call the legitimacy of the claim into question.

threatened to sue State Farm.

On November 6, 2007, State Farm filed its Complaint for Declaratory Judgment (doc. 1) in this District Court.  The Complaint reflects State Farm's request that the Court declare the parties' respective rights and obligations under the Policy, and further that the Policy be deemed void based on Richardson's delay in reporting the loss to State Farm, his refusal to cooperate by submitting to a recorded statement, and his failure to satisfy the conditions precedent of submitting to a statement regarding the loss and making documents available to State Farm as he had been requested to do.  State Farm now seeks summary judgment on these issues.

## II.    Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and [] the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.    Analysis.

### A.    *Richardson Failed to Fulfill Conditions Precedent to Recovery.*

State Farm's position on summary judgment is straightforward.  The Policy included as conditions precedent to coverage certain requirements that Richardson submit to statements and provide records and documents as often as reasonably required by the insurer.  State Farm

-10-

maintains that the undisputed facts establish that Richardson failed to comply with those conditions precedent, which amounts to a material breach of the Policy, relieving State Farm of any obligation to pay his claim under the terms of that Policy.

The Policy unambiguously imposed upon Richardson the duty, after a potentially covered loss, to "as often as we reasonably require ... provide us with records and documents we request and ... submit to and subscribe ... statements; and examinations under oath."  (Plaintiff's Exh. A, at SF-20.)  "General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract."  *Drummond Co. v. Walter Industries, Inc.*, 962 So.2d 753, 780 (Ala. 2006).[14] Courts have routinely upheld the validity of such "duties after loss" provisions obliging an insured to furnish information and documents to the insurer.  *See, e.g., Nationwide Ins. Co. v. Nilsen*, 745 So.2d 264, 267 (Ala. 1998) ("An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process. ... Moreover, an insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.") (citations omitted); *Merchants Ins. Co. v. Lilgeomont, Inc.*, 84 F.2d 685, 687 (5th Cir. 1936) ("The contractual provision for discovery of books and papers and of material facts known to the insured is reasonable and valid."); *Laine v. Allstate Ins. Co.*, 355 F. Supp.2d 1303, 1305 (N.D. Fla. 2005) ("The law is settled that an insurance policy provision requiring an insured to submit to an examination under oath is lawful and binding.").

Similarly, the law is clear that an insurer's obligation to pay covered claims under a policy of insurance is not triggered until the insured complies with the insurer's reasonable requests for statements and documents pursuant to a "duties after loss" provision.  *See Nilsen*, 745 So.2d at 266 (where insurance policy's "duties after loss" section required insured to submit to examination under oath, insured's submission to such examination was a condition precedent,

---

[14]     *See also Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala. 2006) ("Insurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved.") (citations omitted); *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1034 (Ala. 2005) ("If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy ... by making a new contract for the parties.") (citation omitted).

such that "[o]nly after complying with that condition could he recover under the insurance contract"); *Akpan v. Farmers Ins. Exchange, Inc.*, 961 So.2d 865, 872 (Ala.Civ.App. 2007) (where insureds declined to submit to examinations under oath, insurer "could not be held to have violated a contractual obligation to pay the Akpans' claims when the Akpans had failed to comply with a condition precedent to recovery under their insurance contract").[15]

Viewed in the light most favorable to Richardson, the summary judgment record unequivocally reflects that he failed and refused to comply with these conditions precedent. When State Farm requested certain documents and papers that were pertinent to its investigation, Richardson declined to provide them, but instead quarreled with State Farm about the relevance of such documents.  When State Farm requested on numerous occasions over several months that he submit to a recorded statement, Richardson steadfastly refused unless State Farm furnished him with a written list of specific questions in advance.[16]  In addition to being wholly

---

[15]    Simply put, an insurer's "obligation to pay or to evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims." *United Ins. Co. of America v. Cope*, 630 So.2d 407, 411 (Ala. 1993).  The Alabama Supreme Court has explained that "no case from this Court places on an insurance company an obligation to either investigate or pay a claim until the insured has complied with all of the terms of the contract with respect to submitting claims for payment."  *Id.* at 412.

[16]    Richardson has failed to identify any viable legal or contractual basis for conditioning his participation in the statement contemplated by the "duties after loss" portion of the Policy on receipt of an advance list of questions.  At most, Richardson suggested in correspondence and deposition that his nonresponsiveness was predicated on his Fifth Amendment privilege against self-incrimination.  That privilege does not excuse his performance of a contractual condition precedent to State Farm's payment obligation, as a matter of law.  As the Eleventh Circuit has explained, when an insured seeks to recover proceeds from an insurance contract to which he is a party, "he must be held to the express terms of the agreement.  He is not compelled to incriminate himself.  He is, however, bound by the provisions to which he stipulated when he signed the insurance agreement and cannot expect State Farm to perform its obligations under the contract, by being subject to suit for payment of proceeds, without compliance on his part."  *Pervis v. State Farm Fire and Cas. Co.*, 901 F.2d 944, 947 (11th Cir. 1990); *see also U.S. Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487, 491 (5th Cir. 1992) (insured "cannot, however, rely upon his Fifth Amendment right against self-incrimination as a valid excuse to avoid examination in this civil case"); *Metlife Auto & Home v. Cunningham*, 797 N.E.2d 18, 22 (Mass.App.Ct. 2003) (where insurer requests information concerning loss, insured's "assertion of rights under the Fifth Amendment to the United Constitution ... afforded him no sanctuary from his obligation to cooperate, for it is not by the [Government] or by

-12-

unsupported by the express language of the Policy, Richardson's stance was disingenuous. Early in the process, State Farm did submit written questions to him. Yet he refused to answer all or nearly all of the substantive queries concerning such fundamental matters as the date of loss, the time of reporting the loss to State Farm, and the like. Examining the record in the aggregate in the light most favorable to Richardson, and giving him the benefit of all reasonable inferences, the facts admit to only one conclusion, to-wit: that Richardson intentionally and repeatedly obstructed, impeded, and frustrated State Farm's reasonable efforts to investigate his claim under the Policy by refusing to answer questions, unilaterally imposing extracontractual conditions on State Farm's investigation, making unreasonable and unwarranted demands for advance notice of questions, and generally attempting to dictate to State Farm the method and manner of its investigation, untethered from any contractual or legal authority that might support such a position. Rather than cooperating with the investigation, Richardson brazenly accused State Farm of attempting to "fabricate" a case against him, of "reneging" on the terms of the Policy, and of placing him at State Farm's "mercy," all the while insisting that he was cooperating fully in State Farm's investigation when the converse was obviously true.

Furthermore, State Farm had good reason to invoke its contractual right to take a statement from Richardson. For example, it is undisputed that Richardson's claim did not reach State Farm's adjusters until May 2007, some nine months after the loss.[17] For that reason, State Farm had a reasonable basis for wanting to ask Richardson questions about when and how he

_____

[MetLife] that [Cunningham] is compelled to ... furnish evidence against himself, but by his own contractual undertaking") (citations and internal quotation marks omitted); *Taricani v. Nationwide Mut. Ins. Co.*, 822 A.2d 341, 344-45 (Conn.App. 2003) (noting that "numerous cases ... have held that constitutional immunity from self-incrimination does not justify or excuse the obligation of an insured to cooperate in the prompt investigation of the event on which a claim of insurable loss is based," and that insured's failure to submit to examination under oath was breach of material condition in insurance policy, justifying insurer's decision to deny claim relating to fire at insured's property).

[17]     To be sure, Richardson has asserted that he reported the loss to his agent approximately one week after the fire. His testimony on that point is credited for Rule 56 purposes. But the point is that, wherever the fault for that delay may lie, State Farm's claims office did not receive the claim until nine months later. State Farm had the right to investigate why, yet Richardson refused to cooperate.

reported the loss. After all, the Policy obligated him to "give immediate notice" to State Farm or its agent after a loss. (Plaintiff's Exh. A, at SF-20.) If he had breached the notice provision, such an omission might invalidate his claim, under the Policy terms and Alabama law. *See, e.g., Reeves v. State Farm Fire and Cas. Co.*, 539 So.2d 252, 255 (Ala. 1989) ("the failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract"). By contrast, if Richardson had reported the loss on time and the agent had failed to submit the requisite information to State Farm promptly, then Richardson's claim would not be defective on that basis. Either way, State Farm had a contractual right to investigate and reach informed conclusions as to the claims reporting issue. Yet Richardson failed and refused to answer written questions about his reporting of the loss, or to submit to a recorded statement at which the timing of his reporting of the loss would obviously have been a topic of central importance, thereby stymying State Farm's efforts to establish whether he had in fact complied with the Policy's notice requirement. By doing so, Richardson disrupted and stalled State Farm's reasonable investigative efforts in evaluating his claim under the Policy.[18]

In short, then, the Policy obligated Richardson to cooperate with State Farm's investigation by, among other things, appearing for a statement or examination under oath and providing records and documents to State Farm upon request. The undisputed evidence of record establishes that, over a period of several months and despite actual knowledge of the

---

[18]    In focusing on the timeliness of the reporting of the loss, the Court does not suggest that this issue was the only one that State Farm had reason to investigate. Other aspects of the fire loss also reasonably warranted examination, such as the fact that the insured's ex-wife was living in the house at the time of the fire (perhaps raising a possibility of foul play that State Farm reasonably wanted to investigate by reviewing the divorce documents and asking Richardson questions about it). Yet another example is that Richardson specifically refused to tell State Farm whether he was present at the insured location at the time of the fire. His stonewalling on that question, coupled with his attorney's invocation of *Miranda* rights, might have reasonably raised questions in the insurer's mind as to whether Richardson was somehow culpable in starting the fire. Again, these questions were reasonable areas for State Farm to investigate via requests for a recorded statement and certain documentation from Richardson, rather than blindly paying the claim, no questions asked.

relevant Policy terms, Richardson failed and refused to give a statement to State Farm or to provide relevant documents requested by State Farm.  By virtue of Richardson's failure to satisfy these conditions precedent, State Farm was unable to complete its investigation and therefore did not violate the Policy by failing to pay his claim.

        **B.**      ***Richardson's Counterarguments Are Without Merit.***

        In response to State Farm's summary judgment brief, Richardson does not assert that the Policy entitled him to dictate the terms and conditions of State Farm's investigation.  He cites no legal authority or Policy provisions that would permit him to evade State Farm's attempts to interview him or to obtain relevant documentation from him concerning the loss.  Instead, Richardson focuses his summary judgment brief entirely on the notion that State Farm wrongfully delayed settling his claim between the August 2006 date when he reported it and the May 2007 date when State Farm's investigation began.  This contention is unpersuasive for two reasons.

        First, much of Richardson's argument appears to presuppose that he has brought a counterclaim against State Farm for intentional refusal to settle a claim and/or bad faith.  (*See* Defendant's Response (doc. 27), at ¶¶ 23-27.)  He has not done so.  The only cause of action properly joined herein is State Farm's claim against Richardson for declaratory judgment.  There are no pending counterclaims, so whether there might be genuine issues of material fact on questions of bad faith or intentional refusal to settle a claim is irrelevant to the legal issues implicated by State Farm's Rule 56 Motion.

        Second, even if Richardson is correct that he reported the loss to State Farm in August 2006 and the insurer failed to investigate until May 2007, he offers no law or argument that such an omission on State Farm's part relieved him of the contractual obligation to cooperate with State Farm's investigation or entitled him to impose extra-contractual conditions on any interview that he granted State Farm.  Construing plaintiff's brief generously, it appears that he might be articulating an anticipatory repudiation argument.  But that theory does not apply here. "As a general rule, an anticipatory repudiation gives the injured party an immediate claim to damages for total breach, in addition to discharging his remaining duties of performance." *Congress Life Ins. Co. v. Barstow*, 799 So.2d 931, 938 (Ala. 2001) (citations omitted).  "To be found to have renounced a contract, a party must demonstrate an intention to refuse performance

within the future time allowed by the contract." *Nilsen*, 745 So.2d at 268.  Richardson points to no record evidence, and the Court is aware of none, that might raise a reasonable inference that State Farm renounced the Policy.  Taken in the light in the most favorable to Richardson, the record reflects only that the State Farm agent's office dropped the ball when Richardson reported the loss in August 2006 (such omission apparently prompted by Richardson's insistence that he was not making a claim under the Policy at that time), and that neither Richardson nor anyone else ever followed up on the matter or asked to pursue a claim until April or May 2007.  These circumstances cannot reasonably support a finding that State Farm renounced the Policy, as would be necessary for Richardson to be entitled to insist on State Farm paying his claim despite his unabashed noncompliance with contractual conditions precedent.  In short, the fundamental defect with Richardson's argument is that he has failed to present authority or argument explaining how the alleged delay in State Farm's investigation obviated his contractual duty to abide by the "duties after loss" provision of the Policy or authorized him to impose unilateral extra-contractual conditions on any such compliance.[19]

## IV.   Conclusion.

For all of the foregoing reasons, State Farm's Motion for Summary Judgment (doc. 26) is **granted**.  Based on Richardson's repeated, unjustified failure and refusal to comply with conditions precedent to coverage (specifically the conditions that he provide a statement to State Farm and furnish requested documents and records to State Farm in its investigation) under State Farm homeowners policy number 01-CF-5239-7, the Court **finds** and **declares** that State Farm

---

[19]     In so concluding, the Court does not adopt State Farm's apparent argument that Richardson's testimony about when he reported the loss to the agent should be disregarded because State Farm disputes it.  (Doc. 29, at 3.)  As this Court has noted repeatedly, the record must be taken in the light most favorable to the nonmovant.  Richardson has testified that he reported the loss a week after the fact.  That testimony must be credited for summary judgment purposes.  As such, the Court rejects State Farm's contention that summary judgment should be granted in its favor because Richardson failed timely to report the fire.  Nor is State Farm's position on this point strengthened by its reliance on the distinction between a report of loss and a claim on the Policy.  The "duties after loss" section of the Policy requires the insured to "give immediate notice" of loss to State Farm or its agent, not to file a claim immediately.  Richardson's evidence shows that he satisfied this requirement.  State Farm inexplicably glosses over Richardson's testimony and urges the Court to find that he failed to provide timely notice.  This ill-advised argument would stand the summary judgment standard on its head.

owes no duty under such policy to pay any claims to or on behalf of Jimmy R. Richardson or any other insured arising from or relating to the fire loss at Richardson's insured property (14461 Main Street, Orrville, Alabama) occurring on or about August 5, 2006.  The Court will enter a declaratory judgment providing that State Farm is permanently released from any and all liability under policy number 01-CF-5239-7 arising from or relating to that loss.[20]

In light of this determination, Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Summary Judgment Motion (doc. 28) is **moot**.

There being no claims remaining to be litigated herein, a separate judgment will enter and this file will be closed.

DONE and ORDERED this 9th day of October, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[20]     To the extent that State Farm also seeks a declaration that the Policy is void, that request is **denied**.  State Farm has furnished the Court with neither legal authority nor argument showing that a policy is voided by an insured's failure to comply with conditions precedent to coverage in a particular instance; rather, the authority and argument provided by State Farm show only that an insurer is relieved of the obligation to pay a claim if the insured fails to satisfy conditions precedent to coverage.  The Court will neither perform movant's research nor verbalize movant's arguments for it.